**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**WORLDWIDE COMMODITY CORPORATION, a Florida corporation; Steven Labell, an individual; Joseph L. Allen, an individual; Bruce N. Crown, an individual; Phil Ferrini, an individual; Universal Financial Holding Corporation, a Florida corporation; and Larry Kahn, an individual; Defendants.**

**No. 04–CV–3641.**

United States District Court, E.D. Pennsylvania.

April 26, 2005.

---

Jed M. Silversmith, Washington, DC, James J. Byrne, Robert E.J. Curran, Curran & Byrne, Media, PA, John P. Drohan, III, Drohan & Dorhan LLP, New York, NY, for Plaintiff.

Bruce N. Crown, Hollywood, FL, pro se.

R. Lawrence Bonner, Homer & Bonner, Miami, FL, for Defendants.

### *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

## I. INTRODUCTION

Plaintiff Commodity Futures Trading Commission ("CFTC") has filed suit against individual defendants Steven Labell, Joseph L. Allen, Bruce N. Crown, Phil Ferrini, and Larry Kahn, as well as Worldwide Commodity Corporation ("Worldwide"), and Universal Financial Holding Corporation ("UFHC") for violating the Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–26, and its regulations. Before me now is UFHC's motion to dismiss CFTC's complaint for lack of personal jurisdiction and improper venue. For the reasons that follow, I will deny the motion.

## II. BACKGROUND [1]

Plaintiff CFTC is an independent federal agency of the United States government

---

[1]. These are the facts as presented by the complaint and the affidavits. The court may consider affidavits, among other sources, in deciding a motion to dismiss for lack of personal jurisdiction. *See e.g., Feinberg v. Central Asia Capital Corp., Ltd.,* 936 F.Supp. 250, 253 (E.D.Pa.1996).

charged with the administration and enforcement of the CEA and its own regulations. (Compl.¶11.) The movant, defendant UFHC, is a Florida corporation with its principal place of business in Florida. (*Id.* ¶ 18.) On or about November 1, 2000, defendants UFHC and Worldwide entered into a "Guarantee Agreement" ("the Agreement"). (*Id.* ¶ 19.) Under the Agreement, Worldwide became a guaranteed "Introducing Broker" of UFHC. (*Id.* ¶ 9.) According to the CEA, an "Introducing Broker" solicits or accepts orders for the purchase or sale of any commodity for future delivery and does not accept any money, securities, or property to margin, guarantee, or secure any trades or contracts that result or may result from the orders. 7 U.S.C.A. § 1a(23) (West Supp. 2004). UFHC is a "Futures Commission Merchant" (Compl.¶ 18). Under the CEA, a "Futures Commission Merchant" is similar to an "Introducing Broker" in that it solicits or accepts orders for the purchase or sale of any commodity for future delivery, but, unlike an "Introducing Broker," a "Futures Commission Merchant" can, in connection with receipt of those orders, accept any money, securities, or property to margin, guarantee, or secure any trades or contracts that result or may result from the orders. 7 U.S.C.A. § 1a(20) (West Supp.2004). In this case, each customer solicited by the "Introducing Broker," Worldwide, has his or her accounts with the "Futures Commission Merchant," UFHC. (Compl.¶ 9.) Worldwide and UFHC have continually maintained this relationship since at least November 1, 2000. (*Id.* ¶ 20.)

Worldwide solicits members of the general public to open accounts to trade commodity options. (Compl.¶ 21.) CFTC alleges that in sales made by telephone, Worldwide's "Associated Persons"[2] made and continue to make fraudulent and materially misleading sales solicitations by knowingly misrepresenting or failing to disclose the likelihood of customers realizing large profits from trading commodity options, the risk involved in trading commodity options, and the poor performance record of Worldwide customers who traded commodity options. (*Id.* ¶ 22.)

When a customer agrees to open a trading account with Worldwide, however, the customer submits account-opening documents to UFHC and deposits money with UFHC. (*See, e.g.*2d Dingman Decl. ¶ 4, Exs. 1, 2.) UFHC holds each customer's money in a segregated account and places trades on behalf of each customer, including customers in Pennsylvania. (*See e.g. Id.* ¶¶ 5,6, Ex. 3; 2d DiPretoro Decl. ¶ 4.) UFHC mails daily trade confirmation statements to each customer after each trade is placed and mails monthly statements to customers showing the status of their accounts. (*See e.g.*2d Dingman Decl. ¶¶ 6, 7, Exs. 4, 5; 2d DiPretoro Decl. ¶ 4.) UFHC does not prevent its guaranteed "Introducing Brokers" from soliciting customers in Pennsylvania or anywhere else in the United States, although it periodically provides instructions to its "Introducing Brokers," including Worldwide, limiting where the "Introducing Brokers" are permitted to solicit customers outside of the United States. (2d Dingman Decl. ¶ 9, Exs. 7–8.) Between January 1, 2002 and December 31, 2003, Worldwide opened 368 accounts at UFHC. (*Id.* ¶ 10.) Of those accounts, 31 belonged to customers who reside in the Eastern District of Pennsylvania and another 8 resided in other districts in Pennsylvania. (*Id.*)

---

**2.** An "Associated Person" includes any person associated with an "Introducing Broker" or a "Futures Commission Merchant" who solicits or accepts customers' orders or supervises any person who solicits or accepts customers' orders. 17 C.F.R. § 1.3(aa)(1) and (2).

## III. STANDARD OF REVIEW

A complaint may be dismissed when the court lacks personal jurisdiction over a defendant. Fed.R.Civ.P. 12(b)(2). The plaintiff "bears the burden of establishing the court's jurisdiction over the moving defendants," but if the court "does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004) (citations omitted).

## IV. DISCUSSION

### A. Personal Jurisdiction

For a federal court to exercise personal jurisdiction over a defendant, plaintiff first must execute proper service of summons, *Omni Capital Int'l, Ltd., v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), and second must demonstrate that the requirements of due process have been met. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir.2002).

### 1. Proper Service of Summons

Rule 4(e) of the Federal Rules of Civil Procedure governs service of summons in a federal action "[u]nless otherwise provided by federal law." Fed. R.Civ.P. 4(e); *Omni Capital Int'l, Ltd.*,

484 U.S. at 104–05, 108 S.Ct. 404. Because the CEA has a specific provision governing service of process, the CEA governs the proper execution of service of summons.[3] The enforcement provision for actions by the CFTC provides:

> . . . process in [actions under this section] may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found.

7 U.S.C.A. § 13a–1(e) (West 1999 & Supp. 2004).[4] In strong dicta, the Supreme Court cited 7 U.S.C. § 13a–1[5] as providing explicit authorization of nationwide service of process, because service is authorized "wherever the defendant may be found." *Omni Capital Int'l, Ltd.*, 484 U.S. at 105, 108 S.Ct. 404. Because UFHC was served in the United States,[6] execution of service of process was proper.

### 2. Requirements of Due Process

Next, the constitutional due process requirements for exercise of personal jurisdiction must be met. There are two requirements of due process that must be satisfied in order for a court to exercise personal jurisdiction over a defendant: (a) "the defendant [must have] constitutionally sufficient 'minimum contacts' with the forum," *Pinker*, 292 F.3d at 369 (citing *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)), and (b) "subjecting the defendant to the court's jurisdiction [must] comport[ ] with 'traditional notions of fair play and

---

**3.** Service of process is service of "a summons, or, summons and complaint, and, less commonly, [ ] a writ." Blacks's Law Dictionary 1205 (6th ed.1990). There is no practical distinction between the terms "service of process" and "service of summons."

**4.** Although other sections of the CEA govern actions brought by private parties and entities other than the CFTC, actions brought by the CFTC for violations of the CEA are governed by 7 U.S.C. § 13a–1.

**5.** The United States Code citation, 7 U.S.C. § 13a–1, is also referred to as § 6c of the CEA, which is the original section number of the provision.

**6.** According to the docket sheet, plaintiff filed the notice of summons returned executed on August 18, 2004 (Document No. 7).

substantial justice.' " *Pinker,* 292 F.3d at 369 (quoting *Int'l Shoe Co.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ The first question is whether UFHC has constitutionally sufficient minimum contacts with the forum. In this case, the relevant forum for determining sufficient minimum contacts is the national forum. The Third Circuit in *Pinker* held that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Pinker,* 292 F.3d at 369. To determine "the sufficiency of a defendant's contacts with the [national] forum, a court should look at the extent to which the defendant 'availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States.' " *Pinker,* 292 F.3d at 370 (citing *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 295 (3d Cir.1985)). Those minimum contacts support the exercise of specific jurisdiction over a defendant "when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.' " *Miller Yacht Sales, Inc.,* 384 F.3d

at 96 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472, 105 S.Ct. 2174).

UFHC is incorporated in the United States and did business in the United States. UFHC entered into a "Guarantee Agreement" that contemplated the application of the Commodity Exchange Act. This Agreement was entered into in the United States (Def.'s Reply at 5), and UFHC interacted with Worldwide and the clients solicited by Worldwide in the United States.[7] By taking these actions, UFHC purposefully availed itself of the privileges of American law and of conducting commodity exchanges in the United States, and, therefore, established minimum contacts with the United States. *Pinker,* 292 F.3d at 371.[8]

■ The second condition that must be met in order to satisfy constitutional due process is that the exercise of personal jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Pinker,* 292 F.3d at 370. The Third Circuit in *Pinker* notes that there has been "some debate as to whether this second prong [the "fair play and substantial justice" prong] ought to apply in the context of a federal statute authorizing nationwide service of process." *Id.* at 371 n. 2 (citations omitted). Although the court in *Pinker* does not resolve that de-

7. UFHC argues that a finding of sufficient minimum contacts for the exercise of personal jurisdiction is not proper because the Agreement and the services that UFHC provided for Worldwide pursuant to the Agreement were entered into and performed in Florida. (Def.'s Reply at 5.) Contrary to UFHC's intent, this assertion actually supports a finding of sufficient minimum contacts because Florida is within the national forum, which is the relevant forum for a minimum contacts analysis when there is nationwide service of process.

8. A court may exercise either general or specific personal jurisdiction. *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 369 n.1 (3d

Cir.2002) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists when the claim "arises out of or relates to" the defendant's limited contacts with the forum. *Id.* at 414, 104 S.Ct. 1868. In the present case, in part because UFHC is a domestic entity and the relevant forum is the United States, there are sufficient minimum contacts for both specific and general jurisdiction.

bate, it states that the Third Circuit has "hinted that a fairness analysis consisting of more than an assessment of the defendant's national contacts would be appropriate." *Id.* As the court did in *Pinker,* I will analyze whether the exercise of personal jurisdiction in the instant case is consistent with "traditional notions of fair play and substantial justice."

In addition, there is some question after *Pinker* as to whether, when there is nationwide service of process, the "fair play and substantial justice" analysis should consider the fairness of subjecting the defendant to personal jurisdiction in the particular district in which the suit has been brought or in the United States as a whole. The court in *Pinker* makes the following observation:

> [T]he application of a "fair play and substantial justice" test has generated the most controversy in cases in which a defendant has contested the jurisdiction of the particular district court in which he was being sued in addition to, or rather than, his contacts with the nation as a whole, on the basis that the forum was a particularly unfair one.

*Pinker,* 292 F.3d at 371 n. 2. Because the defendant in *Pinker* did not assert that being sued in the District of New Jersey was more unfair than being sued in any other district in the United States, the court in *Pinker* analyzed the fairness of subjecting the defendant to jurisdiction in the United States rather than the specific district within the United States. *Id.* Unlike the defendant in *Pinker,* which was a foreign corporation, UFHC is a domestic corporation, and it asserts that the exercise of personal jurisdiction is unfair in the Eastern District of Pennsylvania because UFHC is incorporated in Florida and conducts its activities primarily in Florida.

When a defendant is operating under a statute that provides for nationwide ser-

vice of process, as UFHC is in the present case, the defendant can reasonably anticipate being sued in any district in the United States for purposes of the minimum contacts analysis. Accordingly, there does not seem to be much room to find that one district in the United States is more likely than another to violate the "traditional notions of fair play and substantial justice." In addition, the national interest in regulating commodity exchanges supports exercising jurisdiction in any district in the United States in the present case. However, because of the admonition in *Pinker* warning that the application of the "fair play and substantial justice" test is more controversial in cases in which the defendant objected to exercise of personal jurisdiction in a particular district, I will analyze the "fair play and substantial justice" prong of the due process analysis by weighing the fairness of exercising personal jurisdiction over UFHC in the Eastern District of Pennsylvania.

*Pinker* articulated the following explanation regarding "fair play and substantial justice":

> In the context of state courts, the Supreme Court has stated that this inquiry requires evaluating "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interests of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (internal quotation marks omitted). In the federal court context, the inquiry will be slightly different, taking less account of federalism concerns, *see Max Daetwyler,* 762 F.2d at 294 n. 4, and focusing more on the national interest in further-

ing the policies of the law(s) under which the plaintiff is suing.

*Pinker,* 292 F.3d at 370–71. In applying this standard, the court in *Pinker* found that it was consistent with "traditional notions of fair play and substantial justice" to subject a foreign defendant to personal jurisdiction in the United States when it took affirmative steps to market certain financial instruments to the American investing public and when it is alleged to have made material misrepresentations that artificially inflated the market of those financial instruments. *Id.* at 372–73. The court also found that "the national interest in furthering the policies of the American securities regulatory system militates in favor of exercising personal jurisdiction over [the defendant]." *Id.* at 372.

In the present case, UFHC did not prohibit Worldwide from soliciting customers in Pennsylvania and took affirmative steps to transact with customers in the Eastern District of Pennsylvania by corresponding with, holding money for, and placing trades on behalf of customers in the Eastern District of Pennsylvania. Furthermore, because all the other defendants are before this court, exercising jurisdiction in this district promotes effective resolution of the controversy. The only factor that weighs against the exercise of personal jurisdiction in the Eastern District of Pennsylvania is the burden on UFHC of traveling to Pennsylvania, which is not as substantial as the factors supporting the exercise of personal jurisdiction in the Eastern District of Pennsylvania. Therefore, requiring UFHC to defend in the Eastern District of Pennsylvania does not offend the "traditional notions of fair play and substantial justice."

## B. Venue

■ UFHC also asserts that venue is improper. The relevant part of the Com-

modity Exchange Act includes a venue provision along with its provision for nationwide service of process:

(e) Venue and process

Any action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur. . . .

7 U.S.C.A. § 13a–1 (1999 & Supp.2004). *See Nicholas v. Saul Stone & Co., LLC,* 224 F.3d 179, 184–85 (3d Cir.2000) (interpreting a similar provision of the CEA that governs enforcement by private actors as the venue provision). Accordingly, venue is appropriate where the defendant is found or is an inhabitant, transacts business, or where the act or practice occurred.

■ In the present case, taking the facts in the light most favorable to the plaintiff, UFHC transacted business in the Eastern District of Pennsylvania. UFHC held trading accounts on behalf of 31 customers in the Eastern District of Pennsylvania. Each customer submitted account-opening documents to and deposited money with UFHC. UFHC held each customer's money in a segregated account and placed trades on behalf of each customer. UFHC mailed daily trade confirmation statements to each customer after each trade was placed and mailed monthly statements to customers showing the status of their accounts. Therefore, UFHC maintained an ongoing business relationship with the 31 customers in this district, and venue is proper in the Eastern District of Pennsylvania as to UFHC.

## V. CONCLUSION

Plaintiff has met its burden of making a prima facie showing that this court may exercise personal jurisdiction over UFHC and that venue is proper in the Eastern

District of Pennsylvania. Therefore, UFHC's motion to dismiss is denied.